## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| BEAUTIFUL MINDS OF TOMORROW MINISTRY; NORTH POINT MINISTRIES; and FAMILY TREE MINISTRIES INCORPORATED, *Plaintiffs* | : CIVIL ACTION NO. 3:24-cv-01783-VDO<br>:<br>:<br>:<br>:<br>: |
| v. | :<br>: |
| BETH BYE, in her official capacity as Commissioner of the Connecticut Office Of Early Childhood; LAURIE AUDETTE, In her official and personal capacities; and ELIZABETH PROIETTI, in her official and personal capacities, *Defendants* | :<br>:<br>:<br>:<br>:<br>:<br>: MARCH 3, 2025 |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

Defendants, Beth Bye, Commissioner of the Office of Early Childhood, Laurie Audette, and Elizabeth Proietti, file this memorandum of law in support of their motion to dismiss all six counts of Plaintiffs' Complaint (ECF No. 1) pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

Plaintiffs allege that Defendants violated their rights under the First Amendment's Free Exercise Clause (Count I); First Amendment's Establishment Clause (Count II); Fourteenth Amendment's Equal Protection Clause (Count III); Fourteenth Amendment's Due Process Clause (Count IV); the Connecticut Constitution (Count V); and the Connecticut Religious Freedom Act (Count VI). Plaintiffs seek declaratory and injunctive relief against all Defendants, as well as

actual, nominal, and punitive damages against Defendants Proietti and Audette. Plaintiffs also seek attorneys' fees and costs.

This Court lacks subject matter jurisdiction because Plaintiffs' claims against Defendants in their official capacities are barred by the Eleventh Amendment and Plaintiffs' claims against Defendants in their individual capacities are barred by qualified immunity.[1] Additionally, Plaintiffs have failed to state a claim upon which relief may be granted with respect to all six counts. The Complaint therefore must be dismissed in its entirety.

## I.    BACKGROUND

### A.    The Office of Early Childhood's regulation of child care service providers.

The Commissioner of the Office of Early Childhood ("OEC") is mandated with ensuring that child care service providers "meet the health, educational and social needs of children" in Connecticut. Conn. Gen. Stat. § 19a-79(a). Accordingly, OEC regulates, and requires to be licensed, child care services within this State. Conn. Gen. Stat. §§ 19a-77, 19a-80, 19a-87b. Included in the definition of "child care services" are child care centers, group child care homes, and family child care homes. Conn. Gen. Stat. § 19a-77(a). These licensing statutes were enacted to promote the public welfare, and their purpose is remedial, not penal. *See Episcopal*

---

[1] In their letter to the Court dated January 22, 2025 (ECF No. 26), Plaintiffs represent that money damages are not being sought from Defendants sued in their official capacities and that declaratory and injunctive relief are being sought from the Defendants in their official capacities only. The Defendants nevertheless respond here to the Complaint, as filed.

*Church of St. Paul v. Galvin*, No. CV-054015582-S, 2006 Conn. Super. LEXIS 2470, at *16 (Super. Ct. Aug. 10, 2006).

Conn. Gen. Stat. § 19a-77(b), however, specifically identifies types of services which are *not* considered "child care services" for regulatory purposes, and therefore those categories delineated in subsection (b) are not subject to licensure by OEC. Among these excluded services are "[r]eligious educational *activities* administered by a religious institution exclusively for children whose parents or legal guardians are members of such religious institution . . . ." Conn. Gen. Stat. § 19a-77(b)(8) (emphasis added) (the "religious educational activities exclusion"). Services that are excluded from licensure under § 19a-77(b)(8) must meet all three statutory criteria: first, the provider must be a religious institution; second, the provider must administer religious educational activities; and third, the parents or legal guardians of participating children must be members of the religious institution.

While religious education is a necessary *component* of this exclusion, when OEC examines service providers to determine whether the service falls within the exclusion, its primary focus is whether the services provided are *activities* – which child care is not. Because "child care services" is defined in Connecticut statute but "activities" is not, in determining whether services are activities, rather than child care, OEC considers several factors: the age of the children served (e.g., six months old or school-aged), the regularity or frequency of the services (e.g., Monday through Friday or only one day per week, year-round or intermittently throughout the year), the number of hours the child participates in the services (e.g., Monday through

3

Friday, 8:30 a.m. to 4 p.m., or *only* Fridays from 2 p.m. to 4 p.m.), and whether the parent or legal guardian remains onsite during the services. No single factor is necessarily dispositive. Only if after assessing the totality of the circumstances OEC determines that a particular service is an "activity" will it proceed to determining whether such activity is administered by a religious institution exclusively for the children of its members. Simply put, the religious educational activities exclusion would apply to a traditional "Sunday school" or "Hebrew school" program but *not* to traditional preschools and day cares, irrespective of whether those programs are secular or not.

### B. Plaintiffs' Complaint.

Plaintiffs are three 501(c)(3) Christian ministries: Beautiful Minds of Tomorrow ("BMOT"), founded in 2022; North Point Ministries ("North Point"), founded in 2021; and Family Tree Ministry ("Family Tree"), founded in 2023. (ECF No. 1, ¶¶ 1-3, 19, 38, 54) Plaintiffs allege that they are wholly non-secular, and that they administer religious educational activities exclusively to children whose parents or legal guardians are members of their respective ministries. (ECF No. 1, ¶¶ 20, 21, 40, 41, 56, 57)

According to the Complaint, OEC notified North Point in 2023, and BMOT and Family Tree in 2024, that it was investigating reports that Plaintiffs were operating illegal child day care facilities, and that operating a family day care home, group day care home, or child day care center is prohibited by Conn. Gen. Stat. §§ 19a-87b and 19-80 unless the facility is licensed by OEC. (ECF No. 1, ¶¶ 14, 28, 42,

57; Exs. 7, 15, 26) The notice further informed Plaintiffs that if they were operating illegal child care facilities, they must cease immediately and that failure to do so could result in legal action, including an injunction and civil penalty of up to $100 per day of unlicensed child care operation. (ECF No. 1. 7, 15, 26) As a result of its investigation, on or about October 22, 2024, OEC, via Defendant Proietti, issued BMOT a demand to cease unlicensed child care operation. (ECF No, 1, ¶ 34; Exs. 7, 12) As a result of its investigation, on or about September 30, 2024, OEC, via Defendant Audette, issued North Point a demand to cease *unlicensed* child care operation. (ECF No. 1, ¶ 47; Exs. 15, 21) As a result of its investigation, on or about October 11, 2024, OEC, via Defendant Proietti, issued Family Tree a demand to cease unlicensed child care operation. (ECF No. 1, ¶ 75; Exs. 26, 40) Family Tree has since been licensed. (ECF No. 1, ¶ 77) Plaintiffs allege that, unlike a denial or suspension of a license, there is no process by which a provider may challenge the Commissioner's determination that the provider is not "exempt" from licensure pursuant to Conn. Gen. Stat. § 19a-77(b). (ECF No. 1, ¶ 16-17)

According to Plaintiffs, "[b]eing licensed is a burden," as it requires providers to comply with OEC licensure regulations, and, while they mischaracterize the plain language of the statute, Plaintiffs allege that the services they provide are "exempt" from licensure pursuant to Conn. Gen. Stat. § 19a-77(b)(8), which is one of several categories of services that are *excluded* from the statutory definition of "child care services." (ECF No. 1, ¶ 14) *See Sharkey v. Quarantillo*, 541 F.3d 75, 83 (2d Cir. 2008) (Court is not bound to accept as true legal conclusions couched as

factual allegations). Accordingly, Plaintiffs allege that Defendants have violated their federal and state Constitutional rights, as well as rights pursuant to Connecticut statute, merely by requiring them to get licensed.

Specifically, Plaintiffs allege that Defendants have: violated the First Amendment's Free Exercise Clause (Count I); violated the First Amendment's Establishment Clause (Count II); violated the Fourteenth Amendment's Equal Protection Clause (Count III); violated the Fourteenth Amendment's Due Process Clause (Count IV); violated the Connecticut Constitution (Count V); and violated the Connecticut Religious Freedom Act (Count VI). They seek a declaration that they qualify for a licensure "exemption" for religious educational activities pursuant to Conn. Gen. Stat. § 19a-77(b)(8) and a preliminary and permanent injunction "enjoining Defendants to cease refusing to recognize Plaintiffs as exempt under § 19a-77(b)(8)." (ECF No. 1, p. 21) They further seek damages against Defendants Audette and Proietti.

## II.    STANDARD OF REVIEW FOR A MOTION TO DISMISS

A "case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011), *aff'd*, 133 S. Ct. 721 (2013). The "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002). Although this Court must accept as true all material factual allegations in the Complaint, it is not "bound to accept as true a legal conclusion couched as a factual allegation." *Sharkey*, 541 F.3d at 83 (citation and

6

quotation marks omitted). Rather, "when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). Moreover, a court also may resolve disputed jurisdictional fact issues by referring to "evidence outside the pleadings." *Makarova v. United* States, 201 F.3d 110, 113 (2d Cir. 2000). "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006) (citation and quotation marks omitted).

A case may be dismissed under Rule 12(b)(6) for failure to state a claim. In ruling on a motion to dismiss under Rule 12(b)(6), the court may consider only "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). Importantly, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Nor is the court "bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

Rather, the court must deem all of the material facts alleged in the complaint to be true and draw all reasonable inferences in favor of the plaintiff. *Pani v.*

*Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998). However, the facts alleged "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads fact that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Accordingly, unless a plaintiff's well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

A motion to dismiss is also a proper vehicle to assert a defendant's qualified immunity against the allegations in the complaint[2]. *See Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009); *Looney v. Black*, 702 F.3d 701, 705 (2d Cir. 2012). It "may properly be raised at the pre-discovery, motion-to-dismiss stage, because qualified immunity provides government officials immunity from suit rather than a mere defense to liability." *DeVecchis v. Scalora*, No. 3:12 CV 01575(JAM), 2015 U.S. Dist. LEXIS 10435, at *10 (D. Conn. Jan. 29, 2015) (quoting *Looney*, 702 F.3d at

---

[2] Defendants Audette and Proietti are sued in both their individual and official capacities.

8

705) (cleaned up). The qualified immunity "issue should be resolved when possible on a motion to dismiss, before the commencement of discovery, to avoid subjecting public officials to time consuming and expensive discovery procedures." *Garcia v. Doe*, 779 F.3d 84, 97 (2d Cir. 2014) (cleaned up).

"A district court may grant a Rule 12(b)(6) motion on the ground of qualified immunity if the facts supporting the defense appear on the face of the complaint." *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (internal quotation marks omitted). Qualified immunity bars suits at the motion to dismiss stage if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Holland v. City of New York*, 197 F. Supp. 3d 529, 541 (S.D.N.Y. 2016) (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (granting motion to dismiss claim against individual based on qualified immunity because there was no established rule that during a lockdown or other exigent situation a correction officer is prohibited from conducting a strip search and viewing the private parts of a Muslim inmate of the opposite sex)).

Sovereign immunity is also properly raised through a motion to dismiss. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145 (1993) ("[A] motion by a State or its agents to dismiss on Eleventh Amendment grounds involves a claim to a fundamental constitutional protection . . . whose resolution generally will have no bearing on the merits of the underlying action." (Citation omitted.)) "[T]he value to the States of their Eleventh Amendment

immunity, like the benefit conferred by qualified immunity to individual officials, is for the most part lost as litigation proceeds past motion practice." *Id.*

## III.   ARGUMENT

### A.   The Eleventh Amendment bars all of Plaintiffs' claims against the State.

Plaintiffs' Complaint alleges violations of Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution, as well as the Connecticut Constitution and Connecticut state law. They bring suit against OEC Commissioner Bye in her official capacity and against state employees Audette and Proietti in their official and individual capacities. While as to Defendant Bye Plaintiffs seek only declaratory and injunctive relief, from Defendants Audette and Proietti they seek monetary damages as well as declaratory and injunctive relief for civil rights claims brought pursuant to 42 U.S.C. § 1983. (ECF No. 1, p. 21)

### 1.   Plaintiffs' federal claims are barred by the Eleventh Amendment.

All four federal claims (Counts One through Four) should be dismissed for lack of subject matter jurisdiction based on the Eleventh Amendment. The Eleventh Amendment bars suit against a State in federal court. *Papasan v. Allain*, 478 U.S. 265, 276 (1986). "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Edelman v. Jordan,* 415 U.S. 651, 668-669 (1974) (money damages barred); *Cory v. White*, 457 U.S. 85, 90-91 (1982) (injunctive relief barred); *Atlantic Healthcare Benefits Trust v. Googins*, 2 F.3d 1, 4 (2d Cir.

1993) (declaratory relief barred). The only exceptions are if States have consented to suit or Congress has abrogated the states' sovereign immunity. *Kilcullen v. N.Y. State DOL*, 205 F.3d 77, 79 (2d Cir. 2000). "[A]bsent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254 (2011).

To the extent Plaintiffs rely upon 42 U.S.C. § 1983 to seek relief from the State for alleged constitutional violations, their reliance is misplaced. "The Supreme Court has oft reiterated that § 1983 does not abrogate a State's Eleventh Amendment immunity from suit without its consent. . . . The Second Circuit and the courts within its jurisdiction have also long upheld this principle." *Smith v. Conn. Dep't of Corr.*, No. 3:13-CV-00828 (VLB), 2014 U.S. Dist. LEXIS 106701, at \*15 (D. Conn. Aug. 4, 2014) (citing *Inyo Cnty. v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony*, 538 U.S. 701 (2003); *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989); *Quern v. Jordan*, 440 U.S. 332 (1979)).

Plaintiffs' § 1983 claims also fail because state employees acting in their official capacity are not "persons" for purposes of § 1983. *Will*, 491 U.S. at 71. Section 1983 provides that every "person" acting under color of state law shall be liable for "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Because the State has not waived, nor Congress abrogated, its immunity, Counts One through Six of Plaintiffs' Complaint must be dismissed for lack of subject matter jurisdiction.

The fact that Plaintiffs have sued Defendants Audette and Proietti in their individual capacities does not require a different result. While the Second Circuit has held that *Pennhurst* does not generally apply to individual capacity claims brought in federal court pursuant to state law seeking damages; *see Bad Frog Brewery v. N.Y. State Liquor Auth.*, 134 F.3d 87, 102 (2d Cir. 1998); that does not end the inquiry. The question is whether the state law claims *also* meet the requirements for federal courts to exercise supplemental jurisdiction. Here they do not. Counts Five and Six of the Complaint seek relief based on Article I §§ 3-4 of the Connecticut Constitution and Conn. Gen. Stat. § 46a-58. And as explained by Judge Shea, those provisions of the Connecticut Constitution do not recognize a private right of action. *See Baltas v. Rizvani*, No. 3:21-cv-436 (MPS), 2022 U.S. Dist. LEXIS 213399, at *61-62 (D. Conn. Nov. 28, 2022) (collecting cases). Section 46a-58 also does not provide a private cause of action. *See Cartagena-Cordero v. R&L Carriers Shared Servs., LLC*, No. 3:24-cv-218 (VAB), 2024 U.S. Dist. LEXIS 208248, at *28 (D. Conn. Nov. 15, 2024). Thus, even if qualified immunity did not bar these claims against Defendants Audette and Proietti – which it does not, *see infra* – this Court should, as was the case in *Baltas*, refrain from exercising supplemental jurisdiction over them.

### 2. Plaintiffs' state claims likewise are barred by the Eleventh Amendment.

Counts Five and Six of the Complaint also must be dismissed on Eleventh Amendment immunity grounds because they assert claims against Defendants

12

arising under state law over which this Court does not have jurisdiction. *Pennhurst*, 465 U.S. at 89.

Claims against state officials for violations of state law while carrying out their official responsibilities are barred by the Eleventh Amendment. *Pennhurst*, 465 U.S. at 106. "A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law." *Id.* As the Supreme Court has stated, "it is difficult to think of a greater intrusion on the state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Id.* Accordingly, the Court consistently has held that the Eleventh Amendment is a "jurisdictional bar" and that the "principle of sovereign immunity is a constitutional limitation on federal judicial power established in" Article III of the Constitution. *Id.* at 98. And this jurisdictional bar applies regardless of whether the relief sought from the state law claim is one for injunctive relief or damages. *Id.* at 100, 102.

Counts Five and Six of Plaintiffs' Complaint allege violations by Defendants of Connecticut state law and the Connecticut constitution. Specifically, Plaintiffs allege in Count Five that Defendants have violated the Connecticut Constitution , which prohibits discrimination on the basis of religion, by "depriving Plaintiffs of the religious exemption pursuant to § 19a-77(b)(8) on the basis of their exercise of religion" and "by depriving Plaintiffs of the religious exemption pursuant to § 19a-

77(b)(8) by preferring and solely recognizing Sunday schools as Christian religious educational activities." (ECF No. 1, ¶¶ 135, 136) Plaintiffs further allege in Count Five that Defendants have violated the Connecticut Constitution by depriving them of their rights to due process and equal protection. Similarly, Plaintiffs allege in Count Six that Defendants have violated the Connecticut Religious Freedom Act. As these claims arise solely under state law and the State Constitution, they are barred by the Eleventh Amendment.

The State has not waived, nor has Congress abrogated, its immunity. Therefore, Counts Five and Six of the Complaint must be dismissed for lack of subject matter jurisdiction. *Vega v. Semple*, 963 F.3d 259, 284 (2d Cir. 2020) ("To the extent Plaintiffs seek prospective relief against Defendants in their official capacity for violations of the 'Connecticut Constitution' and 'state law,' those claims are indeed barred by the Eleventh Amendment.").

### 3. The Eleventh Amendment bars Plaintiffs' claims for damages against Defendants in their official capacities.

Plaintiffs do not specify whether they seek damages from Defendants Audette and Proietti in their official or individual capacities. (ECF No. 1, p. 21) To the extent Plaintiffs seek damages from Defendants Audette and Proietti in their official capacities, however, this Court lacks jurisdiction because the Eleventh Amendment bars any claims seeking money damages from state employees acting in their official capacities. *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003). This jurisdictional bar also applies to official capacity claims based on violations of constitutional rights, and bringing an action pursuant to 42 U.S.C. § 1983 does not

override that immunity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Quern v. Jordan*, 440 U.S. 332 (1979); *Jones v. Baran*, No. 3:23-CV-1039 (VDO), 2023 U.S. Dist. LEXIS 206231, at *6 (D. Conn. Nov. 17, 2023).

"Absent proper Congressional abrogation or State waiver, the Eleventh Amendment bars a federal court from hearing suits at law or in equity against a State brought by citizens of that State or another." *Vega v. Semple*, 963 F.3d 259, 281 (2d Cir. 2020). It is well-established that a "suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," which "is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989). Because a suit against a state official in his or her official capacity is considered the equivalent of a suit against the State itself, suits for money damages are barred by the Eleventh Amendment. *Hafer v. Melo*, 502 U.S. 21, 27 (1991); *Edelman v. Jordan*, 415 U.S. 651, 677 (1974). For these reasons, Counts One through Four seeking damages against state Defendants in their official capacity should be dismissed under Rule 12(b)(1).

> **4.    Plaintiffs' claims for injunctive and declaratory relief against Defendants in their official capacities are likewise barred by the Eleventh Amendment because the Ex parte Young Doctrine does not apply.**

As to Plaintiffs' claims for injunctive or declaratory relief, that relief is similarly barred. While an official capacity defendant is not a person for the purposes of § 1983 claims, the court in *Ex parte Young*, 209 U.S. 123 (1908), delineated a narrow exception for official capacity suits seeking prospective injunctive relief. *Will*, 491 U.S. at 71. Here, however, Plaintiffs have failed to allege

sufficient facts to demonstrate that the *Ex parte Young* exception to Eleventh Amendment immunity is applicable. The exception applies only to claims against state officials for ongoing violations of Plaintiffs' constitutional rights. *Deposit Ins. Agency v. Superintendent of Banks*, 482 F.3d 612, 618 (2d Cir. 2007). Thus, the relevant inquiry for the Court is "whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Here, Plaintiffs have not asserted sufficient facts to demonstrate that Defendants Audette and Proietti are engaged in an ongoing violation of federal law. As discussed above, OEC is required by statute to regulate child care service providers to ensure the health and safety of Connecticut's babies and children. And as addressed below, OEC's insistence that Plaintiffs get licensed *or* cease operating is not a violation of any right, much less an ongoing violation of a federal constitutional right. Plaintiffs' threadbare conclusory statements that Defendants Audette and Proietti are violating their constitutional rights, with nothing more, should not suffice where there simply is no right to provide child care services *without a license*.

**B.    The Doctrine of Qualified Immunity bars Plaintiffs' individual capacity claims seeking damages.**

**1.    The Doctrine of Qualified Immunity.**

Qualified immunity shields government officials sued in their individual capacity from civil damages liability "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *McGowan v. United*

16

*States*, 825 F.3d 118, 124 (2d Cir. 2016) (quoting *Wood v. Moss*, 572 U.S. 744, 757 (2014)). Once a court decides that the pleaded facts show that a clearly established statutory or constitutional right was violated by a defendant, the court must decide whether "it was objectively reasonable [for them] to believe that their acts did not violate these clearly established rights" under the circumstances present at the scene. *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010).

Qualified immunity "affords government officials breathing room to make reasonable—even if sometimes mistaken—decisions . . . ." *DiStiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quotation marks omitted). It balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It applies regardless of whether the officials' error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez,* 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting) (citing *Butz v. Economou*, 438 U.S. 478 (1978)). The "driving force" behind the doctrine is to ensure that "insubstantial claims against government officials be resolved prior to discovery." *Anderson v. Creighton,* 483 U.S. 635, 640 n.2 (1987). Thus, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

The State Defendants sued in their individual capacities are entitled to qualified immunity because their alleged conduct did not violate Plaintiffs' clearly

established constitutional or statutory rights, and, even if this Court were to find that Plaintiffs have a clearly established constitutional or statutory right to be excluded from licensure, it was objectively reasonably for Defendants to believe that their conduct did not violate such right. Defendants, in requiring licensure of programs that provide care for young children, acted within their statutory authority in furtherance of the State's obligation to ensure and protect the health and safety of some of its most vulnerable residents. This is not only a key state function, but an honorable and laudable goal, and conduct in furtherance of that goal should not only be protected but encouraged.

> **2.    There is no statutory or constitutional right for a child care service provider to be "exempt" from child care licensure, much less a "clearly established" right.**

In determining whether a defendant is immune, the court need not decide whether there is a constitutional violation before deciding the clearly established aspect of the immunity. *See Pearson* 555 U.S. at 236. The Court can conduct the analysis in the order it choses, either by first determining whether plaintiff alleges a constitutional violation, or by first determining whether any purported constitutional right was clearly established. *Id*.

Plaintiffs claim that Defendants' refusal to "exempt" them from child care licensing requirements violates their rights protected by the First and Fourteenth Amendments of the United States Constitution.

As to Defendant Proietti, Plaintiffs assert only that: (1) she issued BMOT a Demand to Cease Unlicensed Child Care Operation on October 22, 2024; (2) she informed North Point that OEC was not recognizing them as exempt "as a religious

18

institution"[3]; (3) on or about April 1, 2024, she sent a letter to Family Tree informing the ministry that its services are not "exempt" under Conn. Gen. Stat. § 19a-77(b)(8); and (4) on October 8, 2024, she issued Family Tree a Demand to Cease Unlicensed Child Care Operation. (ECF No. 1, ¶¶ 34, 44-45, 59, 75) The allegations as to Defendant Audette are even more sparce: Plaintiffs allege that on September 30, 2024, she issued North Point a Demand to Cease Unlicensed Child Care Operation. (ECF No. 1, ¶ 47) The Complaint neither sets forth that Plaintiffs had a clearly established right to be excluded from the licensing requirements nor that Defendants Audette and Proietti should have understood that Plaintiffs' rights were violated when Defendants informed them that they must either get licensed or cease operating child care services.

Defendants are entitled to qualified immunity because there is no statutory or constitutional right for providers to be excluded from licensure if the service they provide is child care. And Connecticut law could not be clearer on that point: services that meet the statutory definition of "child care services" pursuant to Conn. Gen. Stat. § 19a-77(a) are required to be licensed. Conn. Gen. Stat. § 19a-80, which governs child care centers and group child care homes, provides that "[n]o person,

_____

[3] Plaintiffs wholly mischaracterize the basis for OEC's determination that the ministry was not "exempt" from licensure as being based on whether it is a religious institution. Nothing whatsoever in OEC's April 1, 2024, letter supports such an assertion. Rather, OEC informed North Point that it did not meet criteria for exclusion from licensure "because the primary purpose of [the] program is not the administration of religious educational activities, [the] program is not administrated by a religious institution, *and/or* children whose parents or guardians are not members of the religious institution are enrolled in [the] program." (Emphasis added.) (ECF No. 1, Ex. 18, p. 4)

group of persons, association, organization, corporation, institution or agency, public or private, shall maintain a child care center or group child care home without a license . . . ." Conn. Gen. Stat. § 19a-80(a). Section 19a-87b provides the same for family child care homes. Conn. Gen. Stat. § 19a-87b(a). Plaintiffs' programs meet the statutory definition of child care services, and accordingly, OEC did not violate any right, constitutional or otherwise, by requiring them to be licensed to continue to operate.

Where the alleged conduct does not violate "any constitutionally protected right at all," the court does not need to reach the issue of whether any alleged right was clearly established. *Mozzochi v. Borden*, 959 F.2d 1174, 1179 (2d Cir. 1992). However, even if this Court were to find that Plaintiffs do have a right to be excluded from licensure, Defendants Audette and Proietti are nevertheless entitled to qualified immunity because Plaintiffs' right to be excluded from licensure requirements was not "clearly established" at the time Defendants informed them that they must be licensed to continue to operate. "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (citation and quotation marks omitted); *see also Garcia v. Doe*, 779 F.3d 84, 92 (2d Cir. 2015) (noting that the "dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). In addition, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

20

The Supreme Court has repeatedly instructed lower courts "not to define clearly established law at a high level of generality." *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) (citation omitted). Rather, the specific contours must be established "by controlling authority or a robust consensus of cases of persuasive authority." *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). The Court must therefore "ask whether various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand." *Beckles v. City of N.Y.*, 492 F. App'x 181, 182 (2d Cir. 2012) (emphasis added; quotation marks omitted).

Research reveals no precedential authority either in this Circuit or in others, much less a "robust consensus of cases" addressing circumstances even remotely like those upon which Plaintiffs' Complaint is based – namely, child care providers who allege that state actors' refusal to deem them excluded from licensure requirements violated their statutory and/or constitutional rights.

In the absence of any law or precedent clearly establishing that the services provided by Plaintiffs are among those excluded from the definition of "child care services" pursuant to Conn. Gen. Stat. § 19a-77(b), Defendants cannot be held personally liable for informing Plaintiffs that they must be licensed to operate and, on that basis, Plaintiffs' individual capacity claims are barred by qualified immunity.

21

### 3.    An objectively reasonable officer who makes a determination that a provider is not excluded from licensure would not have known that such determination would violate a clearly established right.

Assuming arguendo that Plaintiffs' clearly established statutory or constitutional rights were violated, Defendants are nonetheless entitled to qualified immunity because it was objectively reasonable for them to believe that their actions were lawful at the time of the conduct alleged. *See Taravella v. Town of Wolcott*, 599 F.3d 129, 134 (2d Cir. 2010) ("[E]ven where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful.")

Under this prong of the analysis, courts "are not concerned with the correctness of the defendants' conduct, but rather the 'objective reasonableness' of their chosen course of action. . . ." *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995). A court may find an officer's actions to be objectively unreasonable only if "no officer of reasonable competence could have made the same choice in similar circumstances." *Id.* at 420-21.

Here, Plaintiffs have not alleged any objectively unreasonable acts or omissions by Defendants. At the heart of the Complaint is Plaintiffs' disagreement with OEC's statutory interpretation of Conn. Gen. Stat. § 19a-77 and their allegations stem entirely from OEC's reasonable and supported assessment of the facts and application to the statute. Defendants do not now, and have not ever, disputed that Plaintiffs are religious ministries that provide services to its

22

members' children. Defendants' conduct was never driven by Plaintiffs' faith; rather, it was based on Defendants' obligation to act to ensure the health and safety of children. Plaintiffs' attempt to spin Defendants' actions as being driven by religious animus therefore is meritless and should not be entertained.

Defendants Audette and Proietti, in their capacities as OEC employees carrying out their respective job duties, informed Plaintiffs that each required licensure as a child care provider. They did so based on their assessment of the facts and application to the statute as interpreted (cite to Wolman's exhibits/emails). It was objectively reasonable for Defendants Audette and Proietti to conclude that, based on the ages of the children served, the regularity and frequency of services, and the days and hours of operation, the services provided were not merely "activities" but were in fact child care services. And, as has already been addressed, all child care service providers, irrespective of whether the child care services they provide are secular or non-secular, must be licensed. See Conn. Gen. Stat. §§ 19a-80(a), 19a-87b. As a result, it was not only reasonable, but necessary for Defendants Audette and Proietti to direct Plaintiffs to either cease operation or get licensed. OEC is tasked with ensuring that child care service providers "meet the health, educational, and social needs of children" in Connecticut. Conn. Gen. Stat. § 19a-79(a). Accordingly, had OEC interpreted the statute as Plaintiffs demand, all faith-based child care providers would circumvent the very purpose of licensure—making sure that those tasked with caring for Connecticut's babies and children are doing so safely and in accordance with state laws and regulations.

23

Because their actions were objectively reasonable, even if Defendants violated a clearly established statutory or constitutional right, their motion to dismiss should be granted on qualified immunity grounds.

### C.    Plaintiffs cannot obtain injunctive relief from Defendants in their individual capacities.

To the extent Plaintiffs seek declaratory and injunctive relief from State officials sued in their individual capacities, such a request is improper, and the claims must be dismissed.

Individual capacity claims for declaratory and injunctive relief are subject to dismissal because equitable relief can only be obtained from defendants sued in their official capacity. *Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993); *see, e.g., Thurmand v. Univ. of Conn.*, No. 3:18-CV-1140 (JCH), 2019 U.S. Dist. LEXIS 14622, at *9 (D. Conn. Jan. 30, 2019) (dismissing claim seeking to enjoin official acts of employees sued in individual capacities). The relief that Plaintiffs here seek – "a declaration that they qualify for licensure exemption" and an injunction for "Defendants to cease refusing to recognize Plaintiffs as exempt" – is relief that can only be recovered against the state employees acting in their official capacities. Where "[a] victory in a personal-capacity action is a victory against the individual defendant, rather than against the entity that employs him," equitable relief is unavailable. Accordingly, Plaintiffs cannot obtain declaratory or injunctive relief from Defendants Audette and Proietti in their individual capacities. *See Marsh v. Kirschner*, 31 F. Supp. 2d 79 (D. Conn. 1998).

Accordingly, to the extent Plaintiffs seek equitable relief from the Defendants in their individual capacity, such claims must be dismissed.

**D.    Plaintiffs have failed to allege a plausible First Amendment Free Exercise claim upon which relief may be granted.**

"In order to prevail on a Free Exercise Clause claim, a plaintiff generally must establish that 'the object of [the challenged] law is to infringe upon or restrict practices because of their religious motivation,' or that its 'purpose . . . is the suppression of religious or religious conduct.'" *Okwedy v. Molinari*, 69 Fed. Appx. 482, 484 (2d Cir. 2003) (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993). "It is not a violation of the Free Exercise Clause to enforce a generally applicable rule, policy or statute that burdens a religious practice as long as the government can demonstrate a rational basis for [the] enforcement of the rule, policy or statute, and the burden is only an incidental effect, rather than the object." *Okwedy*, 69 Fed. Appx. at 484 (citation and quotation marks omitted).

Importantly, the protection of the Free Exercise Clause "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability." *Emp't Div. v. Smith*, 494 U.S. 872, 879 (1990). "Where the government seeks to enforce a law that is neutral and of general applicability . . . it need only demonstrate a rational basis for its enforcement, even if enforcement of the law incidentally burdens religious practices." *Fifth Ave. Presbyterian Church v. City of N.Y.*, 293 F.3d 570, 574 (2d Cir. 2002).

The First Amendment's Free Exercise Clause does not allow Plaintiffs to become a law unto themselves. The Clause does not relieve individuals, or organizations, "of the obligation to comply with a law that incidentally forbids (or requires) the performance of an act that their religious belief requires (or forbids) if the law is not specifically directed to religious practice and is otherwise constitutional as applied to those who engage in the specified act for nonreligious reasons." *Smith*, 494 U.S. at 878; *see also Reynolds v. U.S.*, 98 U.S. 145, 166 (1878). "Hence it is necessary in a free exercise case for one to show the coercive effect of an enactment as it operates against him in the practice of his religion." *Sch. Dist. Of Abington Twp. v. Schempp*, 374 U.S. 203, 223 (1963).

Plaintiffs' Complaint fails to allege a plausible Free Exercise claim. Plaintiffs argue that OEC "discriminated against them in the exercise of their faith" either by "demanding they cease operations, or, alternatively"—and critically—subjecting them to the same licensure requirements as to which any nonsecular child care service provider would be subjected. (ECF No. 1, ¶ 83) Plaintiffs' claim is belied by the very facts they allege: OEC is mandated by statute to license child care services – irrespective of whether those services are provided by secular or nonsecular institutions – in order to ensure the health and safety of the children of Connecticut. In assessing Plaintiffs' programs, OEC determined, consistent with its statutory and regulatory authority, that the programs were in fact child care services, and not activities, and therefore did not meet the criteria for licensure exclusion pursuant to Conn. Gen. Stat. § 19a-77(b)(8). OEC's determination was

made on the basis of the nature of services Plaintiffs provide – not on Plaintiffs'
faith.

The challenge here is not Plaintiffs' religious convictions; rather, the
challenge here is Plaintiffs' conduct. Plaintiffs are free to continue to minister to
their child members, but if they wish to continue to do so in a manner that
constitutes child care services within the meaning of Conn. Gen. Stat. § 19a-77(a),
they simply must become licensed to do so. Plaintiffs are asking this Court to hold
that "when otherwise prohibitable conduct" – or conduct properly subject to state
regulation – "is accompanied by religious convictions, not only the convictions but
the conduct itself must be free from governmental regulation." *Smith*, 494 U.S. at
882. The Supreme Court has dismissed this argument, and this Court must do the
same.

> **E.    Plaintiffs have failed to allege a plausible First Amendment
>         Establishment Clause claim upon which relief may be granted.**

The First Amendment's Establishment Clause provides that "Congress shall
make no law respecting an establishment of religion . . . ." U.S. Const., amend. I.
The Establishment Clause applies to the states through the Fourteenth
Amendment. *Cantwell*, 310 U.S. at 303. The "First Amendment mandates
governmental neutrality between religion and religion, and between religion and
nonreligion." *McCreary Cty. v. ACLU*, 545 U.S. 844, 860 (2005) (citation and
quotation marks omitted).

To evaluate whether an otherwise-secular government action "officially
favor[s] one religious denomination over another," courts in the Second Circuit

continue to apply the Supreme Court's analysis from *Lemon v. Kurtzman*, 403 U.S. 602 (1971). To survive an Establishment Clause challenge, the *Lemon* test requires that the government action in question (1) must have a secular purpose, (2) must neither advance nor inhibit religion as its primary effect, and (3) must not foster an excessive government entanglement with religions. *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971).

Defendants' challenged conduct – OEC's determination that Plaintiffs' programs do not meet the exclusion criteria of Conn. Gen. Stat. § 19a-77(b)(8) and thus must be licensed – easily survives the *Lemon* test. Plaintiffs have failed to allege facts to show that OEC's conduct did not have a secular purpose. As discussed both above and below, OEC is responsible for ensuring the health and safety of all children participating in child care services and, accordingly, *all* child care service providers, irrespective of whether they are secular or non-secular, must be licensed. OEC determined that Plaintiffs required licenses to continue to operate not because they are religious institutions, but because they provide child care services – not activities.

Further, and critically, while Plaintiffs' baldly mischaracterize OEC's stated basis for its determination that their programs do not warrant exclusion from licensure pursuant to Conn. Gen. Stat. § 19a-77(b)(8); ECF No. 1, ¶ 22; the actual language of OEC's determination, while inartful, belies any allegation that Defendants acted with religious purpose motivation. It is clear from OEC's plain language that the exclusion of Conn. Gen. Stat. § 19a-77(b)(8) applies to religious

activities "akin" or *similar to* Sunday school or Hebrew school – not *only* Sunday school or Hebrew school. (ECF No. 1, ¶ 90) Plaintiffs therefore have failed to allege any facts to show that Defendants acted with any religious purpose or that the primary purpose of their conduct was to advance or inhibit religion.

With respect to the *Lemon* test's third prong, Plaintiffs' entirely fail to allege any facts which would demonstrate that OEC's conduct fosters an excessive government entanglement with religious.

While the Court must deem all material allegations true, Plaintiffs' assertion that OEC "discriminated against" and "threatened them, by establishing religious institutions that run Sunday or Hebrew schools as the only lawful religious institutions" is premised entirely on their distortion of OEC's clearly stated basis for its determination that their programs are not excluded from licensure pursuant to Conn. Gen. Stat. § 19a-77(b)(8). Plaintiffs therefore have failed to state a plausible Establishment Clause violation and Count II must be dismissed.

### F. Plaintiffs have failed to allege a plausible Equal Protection claim upon which relief may be granted.

Plaintiffs, non-secular child care service providers, claim that, by "denying Plaintiffs recognition of their exemption, Defendants discriminated against [them]." (ECF No. 1, ¶ 107) Plaintiffs allege that OEC's determination that Plaintiffs were not "exempt" from licensure, but that religious institutions that operate a Sunday or Hebrew school are, was arbitrary, capricious, and discriminatory. (ECF No. 1, ¶¶ 30, 31, 33, 48, 68, 70) According to Plaintiffs, Defendants' conduct infringed upon Plaintiffs' Fourteenth Amendment right to equal protection of the laws. (ECF No. 1,

29

¶ 108) Plaintiffs have failed to state a plausible equal protection claim and, on that basis, Count Three of their Complaint should be dismissed.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It essentially requires that the government treat all similarly situated individuals alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985). To prevail on such a claim, Plaintiffs must prove that "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair v. Saunders*, 627 F.2d 606, 609-610 (2d Cir. 1980), *cert. denied*, 450 U.S. 959 (1981). "To state a religion-based claim under the Equal Protection Clause, plaintiffs must plausibly allege that a government actor *intentionally* discriminated against them on the basis of their religion." *Kiryas Joel All. v. Vill. of Kiryas Joel*, 495 F. App'x 183, 189 (2d Cir. 2012) (emphasis added). "'[P]urposeful discrimination require[s] more than intent as volition or intent as awareness of consequences. It instead involves a decisionmaker's undertaking a course of action because of, not merely in spite of, [the action's] adverse effects upon an identifiable group.'" *United States v. City of N.Y.*, 717 F.3d 72, 93 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 676-77).

Plaintiffs' assertion that Defendants discriminated against Plaintiffs but not religious institutions that run Sunday or Hebrew schools falls short of the "well-

pleaded complaint" rule and must be dismissed for failure to state a claim for two reasons. First, aside from asserting that they are non-secular children's ministries, Plaintiffs' Complaint is devoid of any factual support demonstrating that they were treated differently *because of their religion.* Second, even if the Court were to construe Plaintiffs' Complaint as alleging discrimination based on their religion— which it does not—Plaintiffs' equal protection claim nonetheless fails because they have not alleged a "reasonably close resemblance" between themselves and the comparators. *Hu v. City of N.Y.*, 927 F.3d 81, 96 (2d Cir. 2019). It cannot be concluded, based on the allegations in the Complaint, that Defendants treated other religious institutions that offer the *same services*—non-secular child care services— differently than they treated Plaintiffs so as to rise to the level of an equal protection violation. Said another way, Plaintiffs have not alleged that Defendants are knowingly permitting other non-secular child care service providers to operate without a license issued by OEC.

Furthermore, Plaintiffs' failure to identify *any* similarly situated comparators renders their claim subject to dismissal. *Sagaponack Realty, LLC v. Vill. of Sagaponack*, 778 F. App'x 63, 63 (2d Cir. 2019) (affirming dismissal of equal protection claim based, in part, on failure to plead an adequate comparator). Their failure to make these allegations render their Equal Protection claim "deficient as a matter of law" and, accordingly, it must be dismissed. *See, e.g.*, *MacPherson v. Town of Southampton*, 738 F. Supp. 2d 353, 371 (E.D.N.Y. 2010) (citing cases).

**G.    Plaintiffs have failed to allege a plausible Procedural Due Process claim upon which relief may be granted.**

To properly assert a procedural due process claim, Plaintiffs must show (1) that they possessed a protected liberty or property interest; and (2) that they were was deprived of that interest without due process. *Adams v. Suozzi*, 517 F.3d 124 (2d Cir. 2008). Plaintiffs bear the burden of demonstrating the existence and infringement of a protected liberty or property interest. *See Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996). However, the interests protected by the Due Process Clause are not limitless; it "does not protect everything that might be described as a 'benefit'". *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005). "'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Id.* (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)); *see also Harrington v. County of Suffolk*, 607 F.3d 31, 34-35 (2d Cir. 2010) (same). And property interests specifically, are "not created by the Constitution. . . they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents*, 408 U.S. at 577.

Plaintiffs have failed to plausibly allege a due process violation because they have not identified a constitutionally protected liberty or property interest of which they were deprived. Even if this Court were to interpret the Complaint as alleging that Plaintiffs have a liberty or property interest in providing child care services without a license, Plaintiffs have failed to point to any authority granting them such

right or constitutionally recognized interest in doing so.

As addressed above, Connecticut's statutory scheme does not in fact provide for *any* exemptions from licensure. A complaint that fails to identify a constitutionally protected property interest is subject to dismissal for failure to state a claim. *See Baron v. Port Auth. of N.Y. & N.J.*, 271 F.3d 81, 89 (2d Cir. 2001) (affirming dismissal of a procedural due process claim because the plaintiff had failed to identify "a constitutionally protected property interest"). This Court should dismiss the Fourth Count of Plaintiffs' Complaint because they have failed to allege a plausible Procedural Due Process claim upon which relief may be granted.

## IV.    CONCLUSION

The Eleventh Amendment and the doctrine of qualified immunity bar Plaintiffs' claims against Defendants in their official and individual capacities, respectfully, and, substantively, each count of the Complaint fails to state a claim upon which relief may be granted. Accordingly, this Court is without subject matter jurisdiction over the claims Plaintiffs bring, and, therefore, must be dismissed in its entirety.

DEFENDANTS,
COMMISSIONER BETH BYE, LAURIE
AUDETTE and ELIZABETH PROIETTI
WILLIAM TONG
ATTORNEY GENERAL

BY:    */s/ Darren P. Cunningham*
Darren P. Cunningham (Fed. Bar #ct25380)
Elizabeth H. Bannon (Fed. Bar #ct31152)
Alina Bricklin-Goldstein (Fed. Bar #ct31266)
Assistant Attorneys General
165 Capitol Avenue
Hartford, CT 06106
Tel: (860) 808-5210
Fax: (860) 808-5385
darren.cunningham@ct.gov
elizabeth.bannon@ct.gov
alina.bricklin-goldstein@ct.gov

## **CERTIFICATION**

I hereby certify that on March 3, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/ Darren P. Cunningham*
Assistant Attorney General