UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BEAUTIFUL MINDS OF TOMORROW; MINISTRY; NORTH POINT; MINISTRIES; and FAMILY TREE MINISTRIES INCORPORATED,<br>*Plaintiffs*<br><br>v.<br><br>BETH BYE, in her official capacity as Commissioner of the Connecticut Office Of Early Childhood; LAURIE AUDETTE, in her official and personal capacities; and ELIZABETH PROIETTI, in her official and personal capacities,<br>*Defendants* | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO. 3:24-cv-01783-VDO<br><br><br><br><br><br><br><br><br><br><br><br><br><br>SEPTEMBER 2, 2025 |

## DEFENDANTS' SUPPLEMENTAL BRIEF

Based on two recent Supreme Court decisions – *Cath. Charities Bureau v. Wis. Lab. & Indus. Review Comm'n*, No. 24-154, (Jun. 5, 2025) ("*Catholic Charities*") and *Mahmoud v. Taylor*, No. 24-297 (Jun. 27, 2025) – Plaintiffs have filed two supplemental briefs (Doc. 38 and 39) arguing that: (1) *Catholic Charities* requires this Court to apply strict scrutiny to Connecticut's child care services requirements, and (2) language from the *Mahmoud* decision supports their view that the Constitution "protects the right to send a child to a weekday, all-day, religious educational activity instead of a secular program" and that Connecticut law impermissibly interferes with that right. Plaintiffs further argue that as a result of *Catholic Charities* their Establishment Clause claim (Count II) "should not be dismissed and the personal capacity defendants are not entitled to qualified immunity." Doc. 38 at 2.

*Catholic Charities* is inapposite to Plaintiffs' claims and does not support their arguments opposing Defendants' Motion to Dismiss (Doc. 32) and supporting memoranda (Doc. 32-1 and 37).

In *Catholic Charities* the Supreme Court held that Wisconsin's application of a state statute was a First Amendment violation because it differentiated between religions by favoring those religions that made particular religious choices but denying the exemption[1] to churches that did not. 2025 U.S. LEXIS 2196 at *15 ("Wisconsin's exemption, as interpreted by its Supreme Court, thus grants a denominational preference by explicitly differentiating between religions based on theological practices."). The Court applied strict scrutiny to the Wisconsin law and concluded it could not survive because the differentiation between religions was not narrowly tailored. *Id.* at *5 ("The First Amendment mandates government neutrality between religions and subjects any state-sponsored denominational preference to strict scrutiny.").

Plaintiffs argue that *Catholic Charities* supports their arguments and claims by repeating their incorrect assessment of Connecticut law. In short, Plaintiffs continue to focus on *who* offers the services and not *what* is offered. *See, e.g.,* Doc. 36 at 1. Unfortunately for Plaintiffs, the licensing requirements being challenged are concerned with the latter and not the former.[2] *See* Doc. 32-1 at 22-23. The services provided by Plaintiffs are child care services – not "activities" – and therefore they do not meet the activities criterion of the exclusion contained in § 19a-77(b)(8). That is to say, there is no differentiation made on the basis of religious conduct, as was the case in *Catholic Charities*. Furthermore – and even more importantly – religious conduct in no way controls licensure. It is simply not a criterion. There is no denominational preference as Plaintiffs continue to argue. Accordingly, *Catholic Charities* provides no support for Plaintiffs' arguments.

---

[1] The Wisconsin law at issue entitled a nonprofit organization to an exemption from Wisconsin's unemployment-insurance tax on employers if it was controlled by a church and "operated primarily for religious purposes." *Wis. Stat.* § 108.02(15)(H)2 (2021-22).
[2] As in prior briefings, Plaintiffs never allege that OEC "exempts" from licensure Sunday schools or Hebrew schools that operate for extended periods of time on weekdays.

*Mahmoud* provides even less support for Plaintiffs' arguments. While the Court's opinion contains the language quoted by the Plaintiffs, both the holding in *Mahmoud* and the underlying facts provide no support here.

The *Mahmoud* Court acknowledged that the strict scrutiny test from *Wisconsin v. Yoder*, 406 U.S. 205, 218 (1972), was merely "an exception to the general rule that governments may burden religious exercise pursuant to neutral and generally applicable laws." *Mahmoud v. Taylor*, No. 24-297, 2025 U.S. LEXIS 2500, at *61 (June 27, 2025). The Court explicitly concluded that it was neither expanding *Yoder* nor limiting *Emp't Div. v. Smith,* 494 U.S. 872 (1990), explaining that "the burden imposed here is of the exact same character as that in *Yoder*." *Mahmoud*, 2025 U.S. LEXIS 2500, at *62 n.14.

Connecticut's licensing requirements at issue here are a far cry from the limited exceptions to the *Smith* rule as expressed in *Yoder* and *Mahmoud*. *Yoder* famously involved compulsory education that necessarily involved a substantial amount of time that children were outside the scope and influence of their families. And *Mahmoud* involved the teaching of materials that were directly in contravention of families' beliefs.

The licensing requirements here are not of the same character as the challenged actions taken by the governments in *Yoder* and *Mahmoud*. Nor do they "substantially interfere" with the religious development of the children enrolled in Plaintiffs' child care services. *Mahmoud*, 2025 U.S. LEXIS 2500, at *41. Connecticut requirements are neutral and generally applicable licensing requirements that in no way constitute the entanglement of government and religion outlined in *Yoder* and *Mahmoud*. Connecticut's licensing requirements exist to protect children specifically and public health more generally, and, for good measure, are in no way motivated or designed to be hostile to religion. The licensing requirements do not involve the compelled

3

learning regulations at issue in both *Yoder* and *Mahmoud* and therefore do not similarly interfere with parents' religious upbringing of their children  And Connecticut's licensing requirements in no way "force Plaintiffs to abandon their faith".   Doc. 39 at 2.  Rather, Plaintiffs are free to direct the religious upbringing of the children enrolled in their child care services; they simply must first obtain a license to do so.

For the reasons discussed in Defendants' documents supporting their Motion to Dismiss, *see* Doc. 32-1 and 37, the Plaintiffs' claims must be dismissed.

                DEFENDANTS,
                BETH BYE, LAURIE AUDETTE and
                ELIZABETH PROIETTI

                WILLIAM TONG
                ATTORNEY GENERAL

BY:    */s/ Darren P. Cunningham*
         Darren P. Cunningham (Federal Bar No. ct25380)
         Elizabeth H. Bannon (Federal Bar No. ct31152)
         Alina Bricklin-Goldstein (Federal Bar No. ct31266)
         Assistant Attorneys General
         165 Capitol Avenue
         Hartford, CT 06106
         Tel: (860) 808-5210
         Fax: (860) 808-5385
         darren.cunningham@ct.gov
         elizabeth.bannon@ct.gov
         alina.bricklin-goldstein@ct.gov

## CERTIFICATION

I hereby certify that on September 2, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/ Darren P. Cunningham*
Assistant Attorney General